O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>VINCENT YOUNG,<br><br>    Defendant. | NO. ED-CR-09-081-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** |

Before the Court is Defendant's Motion to Suppress Evidence (Ct. Rec. 23). A hearing on the motion was held on January 25, 2010, and February 12, 2010, in Riverside, California. Defendant was present and represented by Charles Brown. The Government was represented by Daniel Ackerman.

### BACKGROUND FACTS

Officers from the San Bernardino Police Department Narcotics Unit received information from anonymous and unnamed sources that a person named Vince Young sold cocaine base and drove a red mini pick-up truck. Officers learned that a Vince Young lived at 650 N. Mountain View # 6, in San Bernardino, California.

On January 6, 2009, a briefing was held with members of the Unit for a planned surveillance at Mr. Young's residence. It was decided that in the event Mr. Young was seen, Officers S. Aranda and A. Castro, who were standing by in full uniform and in a marked patrol union, would follow Mr. Young. In the event a traffic violation occurred, they would initiate a traffic stop.

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 1

1  Everything commenced according to plan.  Officer Beall observed a red
2  Chevrolet S-10 pick-up truck approaching the 600 block of N. Mountain View.  He
3  got a look at the driver and determined that the driver was Defendant Vincent
4  Young.  A few minutes later, Beall observed Defendant pull out of the driveway in
5  the red truck.  He observed a female passenger.  Defendant drove away heading
6  northbound on Mountain View.  The officers followed in unmarked vehicles.
7  Shortly thereafter, Defendant made a U-turn in the middle of the intersection and
8  returned to 650 N. Mountain View.  He exited the truck, while the female remained
9  inside.  He then walked toward the apartment.  A few moments later, Defendant
10 returned, got in the truck and backed out of the driveway.  Officers  followed the
11 truck as it traveled southbound on Mountain View.

12 Beall then requested Officers Aranda and Castro to follow behind the truck.
13 According to these officers, Defendant was heading eastbound with the left turn
14 signal on, and crossed through the intersection of Fifth Street and Sierra.  He did
15 not make a left turn on Sierra.  Then, with his left turn signal still on, he turned into
16 the number two lane of Fifth Street directly in front of another eastbound traveling
17 vehicle.  The officers concluded that Defendant committed a traffic violation
18 (unsafe turning movement) and pulled him over.[1]

19 Officer Castro contacted Defendant.  He noticed an open Bud Light beer can
20 lying in the bed of the truck.  Castro asked Defendant if he had been drinking or if
21 he was on probation or parole.  Defendant indicated that he was discharged from
22 parole and that he had not been drinking.  Defendant provided Castro with his
23 driver's license, his vehicle registration and proof of insurance.  Castro asked
24 Defendant if he could search him for illegal items and Defendant consented to the
25 search, and stepped out of the vehicle.  Castro searched Defendant and no illegal
26 items were located.

---

[1] The Narcotics Officers stood by in the area out of sight while Officers Aranda and Castro conducted the traffic stop.

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 2

Meanwhile, Officer Aranda contacted the passenger, Charmain Hunt. According to Aranda, she appeared very nervous and avoided making eye contact. She was asked if she was on parole or probation, and she responded that she had been off probation since 2007. Aranda asked her to step out of the vehicle and she complied. She also gave permission for Aranda to search her. Aranda then conducted a limited search of Hunt's person and while doing so Hunt tried to keep her hands near her stomach and near her waistline. It appeared to Aranda that she was trying to conceal something, so he requested a female officer to assist with a more thorough search. A short time later, Officer Yanez arrived to assist with the search. Officer Yanez searched Hunt, and she found a clear plastic bag containing 11 individually packaged plastic baggies containing an off-white rocklike substance on Ms. Hunt's person. The officers suspected the substance was cocaine base.

Once the cocaine base was found, the officers arrested Defendant and Ms. Hunt and contacted Officer Beall. He then went to the scene. When he arrived, Defendant was handcuffed and sitting on the curb. Beall asked Defendant if there was a key for the apartment on the key ring in the ignition of his truck and he stated there was. Beall took the key from the key ring and provided it to Officer Mark Aranda, who proceeded to the Mountain View residence. Defendant was also transported to the residence. Ms. Hunt was transported to the CDC by Officer Flowers after which he returned to the Mountain View residence.

At some point, Defendant's residence was searched. During the search, officers located digital scales, handgun magazines with ammunition, approximately $1900, approximately 269 grams of suspected cocaine base, and approximately 22 grams of methamphetamine. Defendant was *Mirandized* and admitted that some of the money located in his apartment were proceeds from drug sales.

Based on the evidence found during the search, Agent Kaighin applied for and received a federal arrest warrant on March 26, 2009. Defendant was arrested

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 3

on March 31, 2009.  Officers searched his truck and found a black plastic bag containing numerous pieces of cocaine base–roughly 40 grams.

Defendant now moves to suppress any and all evidence obtained by the Government after his initial arrest.

## ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." U.S. Const. amend. IV.  In *Illinois v. Gates*, the Supreme Court held that whether an affidavit is sufficient to establish probable cause is subject to a "totality-of-the-circumstances analysis" where the issuing magistrate is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238 (1983).  "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause."  *Id.* at 239.  "A magistrate's determination of probable cause should be paid great deference by reviewing courts."  *Id.* at 236 (quotation and citation omitted).  The Court must uphold a probable cause determination "so long as the magistrate had a substantial basis for concluding probable cause existed based on the totality of the circumstances."  *Id.*  "The facts presented [to a magistrate] 'must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued.'" *Id.*  In determining whether an affidavit established probable cause for the issuance of a search warrant, the court limits its review to the data contained within the four corners of the affidavit.  *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006).

Here, the Affidavit in Support of the Search Warrant set forth the following facts:

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 4

1. We-Tip information regarding Vince Young, who was reportedly selling narcotics at the Mountain View location;

2. Contact by multiple confidential reliable informants over the past few months about a subject named Vince Young who drives a red pick up truck and sells cocaine;

3. A red pick up truck was observed arriving at the Mountain View location. The driver was recognized as Vince Young based on a DOL picture;

4. Five minutes later the truck left with a female passenger;

5. The truck then made a U-turn back to the residence, Young walked out of sight and approximately five minutes later returned to vehicle and drove in opposite direction;

6. A traffic stop was initiated;

7. Four ounces of cocaine base was located on the passenger;

8. Narcotic dealers commonly conceal narcotics in their residences;

9. Young was not truthful about where he had come from and where he lived;

10. The opinion that Young was trying to distance himself from residence because there are additional narcotics concealed or stored at this location;

11. Officers have frozen the location and are standing by awaiting arrival of signed search warrant.

**1.      Lack of Probable Cause to Issue Search Warrant**

The Court finds that these facts do not provide a substantial basis for concluding that probable cause existed to issue the search warrant.

   *A.     Veracity and Reliability of Confidential Informants*

First, the information provided by the We-Tip and confidential informants was not sufficiently reliable and, therefore, was not entitled to much weight or consideration by the issuing judge. This case started with an anonymous tip supplied by We-Tip, a private organization that receives confidential information

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS ~ 5**

from people who call to report illegal activity. The organization then forwards the information to the respective police agencies within the area. On November 12, 2008, an anonymous caller called and stated that a person is selling drugs from 650 N. Mountain View, apartment unknown. The caller stated that the person lived at this residence with his wife, and was selling drugs to males and females of all ages and races. The caller reported that the person keeps the drugs in his home and his truck, and that he operated a landscaping business under his wife's name. The caller indicated the drug sales involved crack cocaine, marijuana, and methamphetamine. Although the first page indicated that the suspect's name was unknown, the second page containing the Suspect Information #1 provided the name of Vincent Young. These details were not provided in the Affidavit of Probable Cause. In the Affidavit, Beall stated:

> Your affiant conducted surveillance at 650 N. Mountain View in the City of San Bernardino. This surveillance was based on "We-Tip" information your affiant received regarding a subject at this address by the name of VINCE YOUNG, who was reportedly selling narcotics.

At the hearing, Officer Beall stated that he believed there was a second We-Tip, but there is no reference of this second We-Tip in the record.

Officer Beall also stated in his Affidavit in Support of Search Warrant that he had "been contacted by multiple confidential reliable informants over the past few months about a subject named Vince Young who drives a red pick up truck and sells cocaine base."

Probable cause may be established based on a tip from an anonymous informant if there are sufficient indicia of reliability. *United States v. Mayer*, 560 F.3d 948, 957 (9th Cir. 2009)(*citing Gates*, 462 U.S. at 233-34). Where probable cause depends upon the tip of a confidential informant, the magistrate should inquire "whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip." *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003) (citation omitted). A weakness in either the "veracity" or "basis of knowledge" prong is not fatal to a

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS ~ 6**

finding of probable cause, as long as the issuing magistrate had a "substantial basis" for the finding. *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986). The issuing judge was provided nothing to independently establish either of these prongs.

In *United States v. Bell*, the Seventh Circuit faced a similar set of facts. In that case, officers received information from confidential informants indicating that the defendant was involved in the sale of crack cocaine. 585 F.3d 1045, 1048 (7th Cir. 2009). Armed with this information, officers sought a warrant to search the defendant's residence. The Affidavit relied on information provided by an informant. The informant stated that he had just left defendant's residence, and he saw an undisclosed amount of crack cocaine in two plastic bags and a large sum of cash on a table in the living room. He stated he had seen crack cocaine before and was aware of what it looked like. He was also able to describe the location of the defendant's apartment and mentioned that, on previous occasions, he had seen crack cocaine there along with a handgun concealed beneath the couch. Finally, he stated that the defendant had threatened to physically harm others with the gun and had lent the gun to others to threatened people. *Id.*

The Seventh Circuit found that the information provided by the Informant failed to establish the necessary probable cause. The Circuit found the following defects in the Affidavit: (1) it failed to provide any information to establish the informant's reliability; (2) it failed to indicate whether the informant provided information to law enforcement in the past; (3) it failed to give information about the nature of the informant's relationship with the defendant; (4) the informant did not appear before the issuing judge, which would have given the judge an opportunity to assess his credibility; (5) it failed to provide the amount of crack cocaine in the defendant's apartment (the Circuit did not believe that "two plastic baggies" on the living room table provided enough detail to be reliable); and (6) it failed to establish how the informant could identify substance as crack cocaine,

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 7

other than that he had seen it before, which is merely a conclusory explanation. *Id.* at 1050-52. Notably, the Circuit reasoned that it was just as likely that the informant was a rival drug dealer, an angry customer, or had some other beef with the defendant.

Here, the scant information provided in the Affidavit suffers from the same deficiencies found by the Seventh Circuit. Obviously, there was no information to establish the reliability of the We-Tip informant. Likewise, Officer Beall's conclusary characterization of the multiple confidential informants as reliable is insufficient to establish that fact. There is no indication of the nature of the informant's relationship with defendant or the basis of the informant's knowledge. Here, there was even less information provided to the judge than was present in *Bell*. As such, the information provided by the We-Tip and the confidential informants do not have sufficient indicia of reliability and are entitled to little or no weight in determining whether probable cause existed.

   B.   *Lack of Probable Cause to Arrest Defendant*

Second, the Court finds that no probable cause existed to arrest Defendant. As such, the issuing judge should not have relied upon the statements attributed to Defendant after he was arrested.

"Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . . . an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In determining whether there was probable cause to arrest, the Court looks to "the totality of circumstances known to the arresting officers, [to determine if] a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986). While evidence supporting probable cause need not be admissible in court, it must be "legally sufficient and reliable." *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002). The relevant inquiry is what

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 8

the officers knew, collectively, at the time they arrested Defendant. *United States v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005).

In *United States v. Soyland*, the Ninth Circuit held that a passenger's mere presence in a vehicle did not give rise to probable cause to arrest and search, absent a link between the passenger and odor of methamphetamine in the car or the marijuana found on the driver. 3 F.3d 1312 (9th Cir. 1993). In *People v. Collier*, the California courts held that a person's presence in the car where there was a strong marijuana smell was not probable cause to arrest that person for a drug offense, but it furnished a rational suspicion that he may have been involved in the possession and transportation of drugs. 166 Cal. App. 4th 1374 (2008).

Defendant was arrested on two charges: Possession of a Controlled Substance for Sales; and Transportation of a Controlled Substance. There is no evidence linking Defendant to the drugs found on his passenger. Nor is there any evidence that explains the relationship between Defendant and his passenger. Ms. Hunt did not make any statements attributing the drugs to Defendant. Also, it is significant that no drugs were found on Defendant or in his car. Possession of drugs on the passenger does not provide probable cause to arrest the driver without something more. Officer Beall testified under oath before the Court on January 25, 2010. He stated that he had no evidence linking the drugs found on the passenger to the Defendant. When his testimony continued on February 12, 2010, he changed his testimony and stated that he had made a call to an informant to order drugs while Defendant was driving away from his apartment. The Defendant then turned around and drove back to his apartment leaving the inference that he had returned to his apartment to obtain the drugs to make the sale to the informant. This information, if believed, would help tie the drugs on the passenger to the Defendant. The call to the informant was not documented in any report, and was not presented to the Court at the first day of testimony. The contradiction in sworn testimony was justified by the officer as an effort to protect his informant. Officer

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 9

Beall refused to answer factual inquiries in this Court about his conduct in investigations because of internal county investigations into alleged misconduct by the narcotics unit. His testimony was also inconsistent with contemporaneous radio logs of events as well as inconsistent with the testimony of other officers. Based on this record, the Court does not believe the testimony of Officer Beall. As such, the arrest of Defendant was unlawful and in violation of the Fourth Amendment.

        *C.*     *Lack of Sufficient Nexus to Mountain View Residence*

For the same reasons, the Court finds that the facts presented in the Affidavit do not establish a sufficient nexus to tie the drugs found on Ms. Hunt to the 650 N. Mountain View residence. At best, the Affidavit suggests that Officer Beall had a hunch that Defendant was a drug dealer.

After reviewing the four corners of the Affidavit, and considering the totality of the circumstances, the Court finds that the Affidavit does not establish probable cause to support the issuance of the warrant to search the Mountain View residence. As such, Defendant's Fourth Amendment rights were violated when the officers searched the Mountain View residence.

**2.**     **Warrantless Search of the Residence**

The Court also finds that Defendant's Fourth Amendment rights were violated because the officers searched the Mountain View residence prior to the issuance and receipt of the search warrant. The basic principle of Fourth Amendment law is that searches and seizures inside a home without a warrant are presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

According to Defendant, the officers were searching the apartment when he arrived. The Government has not provided any credible evidence to contradict this assertion. Instead, the record is replete with inconsistent statements. Notably, the CAD log reveals significant discrepancies with regard to the time frame for the events as they unfolded and as recounted in Officer Beall's Affidavit and police

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 10

reports.

The CAD log indicates that Officer Beall returned to the residence at 20:00 (8:00 p.m.). Yet, his reports state that he returned at 7:00 p.m. with the search warrant in hand, and began questioning Defendant. During this interview, Officer Beall asked Defendant about the drugs and methamphetamine that were found under the sink in the apartment. Thus, if it is true that the Officers waited until 7:00 p.m. to begin their search, they would have had to discover the drugs immediately. According to the reports, the drugs were found under the kitchen sink cabinets that had been modified. The shelf was loosened, so as to be lifted up and items concealed beneath it. Officer White said that the drugs were found about 20 minutes after the search was started.

The CAD log also indicated that at 5:45 p.m., the officers reported to dispatch that they were arriving at the Mountain View residence to execute the search warrant. It is undisputed that no valid signed search warrant existed at this time.

There are other discrepancies between Officer Beall's time line of events and the CAD log. In his report, Officer Beall indicated that he arrived at the scene of the arrest at 4:14 p.m. The CAD log indicates that he radioed in at 5:01 p.m.

Also, the Court notes that in an undated report written by Officer Beall (Ct. Rec. 23, Ex. A), he stated that at approximately 1900 hours, he returned to the location and the officers began their search. In his Declaration submitted in opposition to Defendant's Motion to Suppress, he gave the following statement:

> At approximately 6:45 p.m., I received a signed (faxed) search warrant from the judge. I then called Officer Anthony White and advised him that the warrant was signed and they could begin their search. I arrived at the defendant's apartment at approximately 7:00 p.m.

There was nothing in the police reports presumably written shortly after the events took place that indicated that Officer Beall radioed ahead to notify the officers that he obtained a search warrant. Officer Beall was not on-site when the

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 11

alleged searching began. Thus, his opinion regarding when the officer's searched is not based on actual knowledge. Given the discrepancies between the CAD log and Officer's Beall's version of events, the Court does not credit the time frames as set forth in Officer Beall's police report. The Court concludes that the officers began searching the Mountain View Residence prior to obtaining a search warrant.

The purpose of the warrant requirement is to interpose a magistrate between the citizen and the police. *Ramirez*, 540 U.S. at 560. Even if the officers were confident that they would be successful in obtaining a warrant, this does not give them a license to begin the search prior to the issuing and obtaining a copy of the search warrant.

There is nothing in the record to suggest that there was any immediate need to protect others or themselves from serious harm to justify the search of the residence prior to obtaining the search warrant. The Government argues that the officers entered the residence to freeze the location and did not search the residence.[2] The evidence does not support this conclusion.

**3.    Good Faith Exception to the Exclusionary Rule**

   *A.    Good Faith Reliance on Search Warrant*

As set forth above, the Court concludes that probable cause did not exist to issue the warrant and the Mountain View residence was searched in violation of the Fourth Amendment. However, suppression of the evidence is not an automatic consequent of a Fourth Amendment violation. *Herring v. United States*, 129 S.Ct. 695, 698 (2009).

There are two lenses through which the Court can view the facts to determine whether the exclusionary rule would be applied in this case. First, the

---

   [2]A freeze occurs when officers enter and take control of–but do not search–a location to secure any weapons or dangerous people and prevent any evidence from being removed prior to a search warrant. *Curiel v. County of Contra Costa,* 2010 WL 236270 (9th Cir. 2010).

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS ~ 12**

Court could confine its analysis to whether the officers reasonably relied upon the search warrant in good faith. *See United States v. Leon*, 468 U.S. 897, 907 (1984). Indeed, *Leon* teaches that when officers act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the officers acted "in objectively reasonable reliance" on the subsequently invalidated search warrant. *Id.* at 922. However, the Court believes that this view is too narrow, in light of the egregious facts in this case. As the Court has found, the officers did not violate the Fourth Amendment just one time with the execution of an invalid warrant. Rather, the officers violated Defendant's Fourth Amendment rights on three different occasions–the unlawful arrest, the unlawful search, and the beginning of the search before the issuance and receipt of the warrant.

Rather than confine the analysis to *Leon*, the better approach is to apply the teachings of the recent Supreme Court case of *Herring*. *Herring* instructs that in order to determine whether the evidence should be suppressed, the court must consider the culpability of the police and the potential of exclusion to deter wrongful police conduct. 129 S.Ct.at 698. The Supreme Court gave the following guidance to courts that are deciding whether to exclude evidence obtained in violation of the Fourth Amendment. First, the exclusionary rule is not an individual right and applies only where it "results in appreciable deterrence." *Id.* (citation omitted). Second, the benefits of deterrence must outweigh the costs. *Id.* Third, the court must assess the flagrancy of the police misconduct, that is, "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 701 (*quoting Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)). As noted by the *Herring* Court, the abuses that gave rise to the exclusionary rule in the past featured intentional conduct that was patently unconstitutional. *Id.* "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 13

deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system . . . the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*

Here, the officer's conduct is strikingly similar to conduct that has been the target of both internal and external investigation by the SBPD. The investigation involved two separate incidents, one occurring in September, 2007 and one in July, 2008, in which it was alleged that officers in the SPBD Narcotics unit, without probable cause, wrongfully detained suspects following a traffic stop in order to obtain further evidence of a crime. In this case, the conduct was repeated. Young was held for a traffic infraction for longer than necessary to complete the traffic investigation, knowingly arrested without probable cause, held for hours during an investigation of his passenger, and held for hours without booking. Moreover, the officers knowingly violated Defendant's Fourth Amendment rights when they began to search the Mountain View residence prior to obtaining a warrant.

The Court finds that in this case, the culpability of the officers was high in that they intentionally engaged in conduct prohibited by the Fourth Amendment. The exclusion of the evidence found in the Mountain View residence would provide great deterrence for this wrongful police conduct.

As noted earlier, at the second hearing Officer Beall attempted to justify his changed testimony. The Court did not believe the justification. There are significant discrepancies between the times set forth by Beall in the police reports and the contemporaneous CAD logs. These times are highly significant because they bear on the Fourth Amendment issues. The Court did not believe the testimony of Beall concerning the timing of events. The complete lack of information in the Affidavit regarding the informants leads the Court to question their existence. Finally, Officer Beall indicated that through the entire time,

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 14

Defendant expressed a willingness to cooperate and consented to being brought back to his residence prior to being brought to the police station for processing. Again, there is nothing in the police reports to substantiate this claim. Notably, if this were the case, it is likely that Defendant would have consented to the search of his residence and it would not have been necessary to obtain a search warrant. On this record, Officer Beall has not been truthful and did not act in good faith in obtaining the warrant and relying on its issuance.

At the February 12, 2010 hearing, Detective Aranda testified that he could not remember anything regarding the events that took place on January 6, 2009. He could not even remember if he was present on that day. His failure to recall events impedes the Court's ability to understand the events as they unfolded on that day. The Court finds that Detective Aranda was not being truthful in his testimony.

Even if the Court were to confine its analysis to the good faith exception found in *Leon*, the Court finds that this exception does not apply in this case. The search warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence objectively unreasonable." As such, the evidence found at the residence will be suppressed at trial.

  B.  *Good Faith Reliance on the Arrest Warrant*

On March 26, 2009, Agent Kaighin filed a Complaint and obtained a federal arrest warrant. The warrant was executed on March 31, 2009.

In her affidavit, Agent Kaighin relied on information obtained from the search of the residence as well as statements made by Defendant, after he was arrested. Under the "fruits of the poisonous tree" doctrine, evidence that was unlawfully acquired cannot be later used to obtain a search warrant. *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963).

The Court finds that after excising the illegally obtained evidence from the Affidavit, probable cause did not exist to issue the arrest warrant. The Affidavit

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 15

relied on the We-Tip information as well as the elusive "confidential reliable" informants, but failed to establish any basis for the veracity or reliability of the tipsters.  The Magistrate was informed that cocaine base was found on the passenger and that Defendant has prior felony controlled substance convictions.  For the same reasons as stated above, these facts do not support a finding of probable cause to arrest Defendant.  As such, the evidence found in his truck when the arrest warrant was executed will be suppressed at trial.

The good faith exception does not prevent the exclusionary rule to apply to the evidence obtained from the March 21, 2009 arrest.  Agent Kaighin is part of the joint task force involved in this investigation. She offices with the county agents involved and is closely aligned with the San Bernardino Police Department's Narcotics Unit.  She participated in January 6, 2009 incidents.  Here, the goals of deterrence in the face of officers' intentional infringement of Defendant's Fourth Amendment rights require that the evidence obtained by the execution of the tainted arrest warrant be suppressed.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Defendant's Motion to Suppress Evidence (Ct. Rec. 23) is **GRANTED**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 18th day of February, 2010.

　　　　　　　　　　_s/Robert H. Whaley_
　　　　　　　　　　ROBERT H. WHALEY
　　　　　　　　　　United States District Judge

C:\Temp\notesFFF692\suppress.wpdrhw.wpd

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS** ~ 16